# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JEFFREY HOWARD,
    Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:17-cv-152

Black, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

    Plaintiff Jeffrey Howard brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security

("Commissioner") denying his application for supplemental security income ("SSI"). This

matter is before the Court on plaintiff's statement of errors (Doc. 14), the Commissioner's

response in opposition (Doc. 18), and plaintiff's reply memorandum (Doc. 21).

## I. Procedural Background

    Plaintiff filed his application for SSI in May 2013, alleging disability since July 18, 2008

due to a combination of physical and mental impairments.[1] The application was denied initially

and upon reconsideration. Plaintiff, through counsel, requested and was afforded a video hearing

before administrative law judge ("ALJ") Peter J. Boylan on October 1, 2015. Plaintiff and a

vocational expert ("VE") appeared and testified at the ALJ hearing. On November 4, 2015, ALJ

Boylan issued a decision denying plaintiff's SSI application. Plaintiff's request for review by the

Appeals Council was denied, making the decision of ALJ Boylan the final administrative

decision of the Commissioner.

---

[1] Plaintiff previously filed an application for SSI in October 2009. His application was denied initially and upon reconsideration. On January 31, 2012, ALJ George Gaffaney issued a written decision denying his application. (Tr. 103-111).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for SSI, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the

claimant can perform other substantial gainful employment and that such employment exists in

the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir.

1999).

## B. The Administrative Law Judge's Findings

Plaintiff initially filed his application for SSI in October 2009, alleging disability since

July 18, 2008. (Tr. 124-36). In rendering his decision on plaintiff's subsequent SSI application,

ALJ Boylan recognized he was bound under principles of administrative res judicata by ALJ

Gaffaney's prior findings as to plaintiff's residual functional capacity ("RFC") unless "new and

material evidence or changed circumstances provide a basis for a different finding. . . ." (Tr. 9)

(citing Acquiescence Ruling (AR) 98-4(6); *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837

(6th Cir. 1997)). ALJ Boylan determined that new and material evidence documented a

significant change in plaintiff's condition and therefore he did not adopt ALJ Gaffaney's prior

RFC determination.[2]

ALJ Boylan applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

1. The [plaintiff] has not engaged in substantial gainful activity since March 22,
   2013, the application date (20 CFR 416.971 *et seq.*).

2. The [plaintiff] has the following severe impairments: degenerative disc
   disease, hepatitis C, arthropathies, personality disorder, anxiety disorder, and
   polysubstance abuse (20 CFR 416.920(c)).

3. The [plaintiff] does not have an impairment or combination of impairments
   that meets or medically equals the severity of one of the listed impairments in

---

[2] ALJ Gaffaney found plaintiff had the RFC for light work with the following exceptions: "the [plaintiff] is able to lift twenty pounds occasionally and ten pounds frequently. The [plaintiff] can sit for six hours and stand for six hours in an eight-hour workday. Regarding nonexertional limitations, the [plaintiff] can only occasionally, climb stairs, kneel, climb ladders, stoop, crouch, balance and crawl. The [plaintiff]'s mental impairments limit the [plaintiff] to simple, routine tasks with only an occasional change in routine work setting, and occasional interaction with the public." (Tr. 106).

20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.  After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with the following limitations: he can occasionally push/pull with the left upper extremity. He can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. He can never climb ladders, ropes, or scaffolds. He can frequently balance. He is limited to no more than occasional use of the left arm, including reaching in any direction (including overhead), handling, fingering, and feeling. He must avoid concentrated exposure to extreme cold, vibration, and hazards including machinery and heights. Mentally, the [plaintiff] is limited to simple, routine, repetitive tasks. He is limited to simple work-related decisions. He can tolerate occasional and superficial interaction with supervisors and coworkers. He can have no interaction with the public as part of job duties. He is limited to tolerating occasional changes in a routine work setting.

5.  The [plaintiff] is unable to perform any past relevant work (20 CFR 416.965).[3]

6.  The [plaintiff] was born . . . in 1965 and was 47 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.  The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.  Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 416.969 and 416.969(a)).[4]

---

[3] Plaintiff has past relevant work as a utility worker. (Tr. 20).

[4] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light unskilled occupations such as cleaner/housekeeper (185 jobs regionally, 250,000 nationally) and inspector (275 jobs regionally and 100,000 nationally). The ALJ also relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative sedentary occupations such as surveillance system monitor (25 jobs regionally, 100,000 jobs nationally). (Tr. 21, 59-60).

10. The [plaintiff] has not been under a disability, as defined in the Social Security Act, since March 22, 2013, the date the application was filed (20 CFR 416.920(g)).

(Tr. 11-21).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was

otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

Plaintiff alleges in his statement of errors that the ALJ erred by: (1) failing to articulate a reason for discounting the finding of the Scioto County, Ohio Department of Jobs and Family Services that he was disabled, (2) failing to account for certain evidence in the record, (3) evaluating his credibility with respect to his chronic pain and functional limitations, (4) relying on a hypothetical question that was "defective" and "not supported by substantial evidence." (Doc. 14).

**1. The ALJ adequately considered the disability finding of the Scioto County, Ohio Department of Jobs and Family Services.**

Plaintiff argues that the ALJ erred in not considering the finding of the Job and Family Services agency that he was disabled in accordance with the Ohio Administrative Code §§ 5101:121-2010 and 5101:1-5-20. (Doc. 14 at 3). Plaintiff asserts that these provisions "contain[] the same definition of disability as contained in the Social Security Act with the exception that the severe impairment may only have to last for a period of nine continuous months." (*Id.*). Plaintiff argues that he testified in the hearing in 2011 that he lived in an assisted living complex and received "$115.00 per month from the Job and Family Services." (*Id.*) (citing Tr. 78). Four years later, plaintiff testified that he was still living in disability apartment units and received a monthly check from the disability and welfare office. (*Id.*) (citing Tr. 32). In failing to consider this information, plaintiff alleges that the ALJ violated Social Security Ruling 06-3p, which requires the ALJ to consider all evidence in the record, including decisions by governmental agencies. (*Id.* at 4) (citing 20 C.F.R. §§ 404.1512(b)(5) and 416.912(b)(5)). Plaintiff states: "[t]he ALJ was aware from the record that [plaintiff] had received disability

6

financial assistance ("DFA") since the last ALJ determination and had been approved to continue to receive those benefits based on another governmental agency's finding of disability . . . prior to making his written decision even if he never looked at EXHBIT B17F which is the determination used by the Department of Jobs and Family Services to find that [plaintiff] was 'unemployable.'" (*Id.* at 4) (citing Tr. 749). Plaintiff specifically argues that the ALJ failed to consider the determination of psychiatrist Dr. Edwin Walker of the Department of Jobs and Family Services that he was "unemployable." (*Id.* at 3, 5) (citing Tr. 749).

The Commissioner argues in response that the ALJ explicitly addressed Dr. Walker's opinion and "reasonably gave it little weight because it was not supported by the medical evidence of record and the limitations provided by Dr. Walker were not well defined." (Doc. 18 at 4) (citing 20 C.F.R. § 416.927). The Commissioner responds that disability assessments prepared under the authority of other agencies are not dispositive in Social Security cases. (*Id.*) (citing 20 C.F.R. § 404.1504). The Commissioner further argues that even if the disability requirements for the state of Ohio were identical to those for Social Security benefits, "a decision by another government agency is not binding on SSA." (*Id.*) (citing *Turcus v. Soc. Sec. Admin.*, 110 F. App'x 630, 632 (6th Cir. 2004)). The Commissioner also asserts that Dr. Walker's opinion predates the relevant period because it was made over a year prior to plaintiff's SSI application date and thus "would not be evidence of [p]laintiff's functional ability during the period at issue from May 2013 through November 2015." (*Id.* at 4-5).

In reply, plaintiff again argues that the ALJ did not mention why he rejected the state agency's finding that he was unemployed. (Doc. 21 at 1). Plaintiff also argues that the state agency experts did not have access to Dr. Walker's opinion and the ALJ did not mention the length, nature, and extent of the treatment relationship with Dr. Walker. (*Id.* at 2).

The Social Security Regulations provide that a determination made by another agency on an individual's disability is not binding: "[a] decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not [the ALJ's] decision about whether you are disabled or blind. [The ALJ] must make a disability or blindness determination based on social security law." 20 C.F.R. § 416.904.[5] Nevertheless, as the ALJ must consider all evidence in the record in making a disability determination, he must also consider disability decisions made by other governmental agencies and explain the consideration given to such evidence. *See* Social Security Ruling 06–3p, 2006 WL 2329939 (explaining that evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered, but "because other agencies may apply different rules and standards than we do for determining whether an individual is disabled, this may limit the relevance of a determination of disability made by another agency"). Likewise, the Sixth Circuit has recognized that disability decisions by other governmental agencies must be taken into account, even though such decisions are not binding on the Social Security Administration. *See Harris v. Heckler*, 756 F.2d 431, 434 (6th Cir. 1985) (reversing SSA denial of benefits, noting it was "strange" the ALJ had the "audacity" to find the claimant not disabled for purposes of social security benefits after he was already found disabled for the purposes of Black Lung and Workers' Compensation benefits); *see also King v. Comm'r of Soc.*

---

[5] Effective March 26, 2017, the regulations were amended and 20 C.F.R. § 416.904 now states:

> [W]e will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits. However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim. . . .

However, because the ALJ made his decision in 2015 before the new regulations went into effect, the Court must apply the regulations that existed at the time of the decision. *See Cameron v. Colvin*, No. 1:15-cv-169, 2016 WL 4094884, at *2 (E.D. Tenn. Aug. 2, 2016).

8

*Sec.*, 779 F. Supp.2d 721, 725 (E.D. Mich. 2011) (and cases cited therein); *Rothgeb v. Astrue*, 626 F. Supp.2d 797, 809 (S.D. Ohio 2009).

In this case, contrary to plaintiff's assertion, the ALJ did not ignore the opinion of Dr. Walker from the Ohio Department of Jobs and Family Services. *See Lowery v. Comm'r of Soc. Sec.*, 886 F.Supp.2d 700, 718 (S.D. Ohio 2012) (An ALJ is not bound by the decision of another governmental agency, but is required to "articulate one or more reasons for rejecting that finding.") (citing SSR 06–3p, 2006 WL 2329939). The ALJ gave "very little consideration" to the Medical Functional Capacity Assessment of Dr. Edwin Walker dated April 2, 2012. (Tr. 19, Tr. 749). The ALJ noted that the assessment was completed prior to the plaintiff's SSI filing date; it was not supported by the medical evidence of record; and the limitations provided were not well-defined. (*Id.*). The ALJ did not expressly cite Dr. Walker's opinion that plaintiff was "unemployable." Nevertheless, the ALJ properly considered Dr. Walker's mental functional capacity assessment as a whole and considered his opinion that plaintiff had marked limitations in the areas of completing a normal workday and workweek without interruptions from psychologically based symptoms and getting along with coworkers or peers without districting them, along with numerous other moderate limitations. (Tr. 19). Although the ALJ did not explain at great length why Dr. Walker's opinion was unsupported by the record, any error in the ALJ's analysis is harmless because Dr. Walker's opinion is conclusory and does not specify the medical evidence upon which he relied to find that plaintiff was "unemployable" and had "marked" limitations in the two areas mentioned above. *See Sallah v. Comm'r of Soc. Sec.*, No. 16-cv-14098, 2018 WL 1322064, at *10 (E.D. Mich. Feb. 23, 2018), *report and recommendation adopted*, No. 2:16-cv-14098, 2018 WL 1316164 (E.D. Mich. Mar. 14, 2018) (discussing

harmless error but ultimately rejecting the argument because the state agency disability determination in that case was neither conclusory nor unsupported by medical evidence).

Plaintiff contends that the ALJ had a duty to more fully develop the record and obtain information on the state disability determination based on his own testimony at the ALJ hearing and the opinion of Dr. Walker. (Doc. 14 at 3, 5). Plaintiff's argument is not well-taken. There is no heightened duty for an ALJ to develop the record where, as here, a claimant is represented by counsel at the administrative hearing. *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983). In *Maier v. Comm'r of Soc. Sec.*, No. 2:14-cv-1440, 2015 WL 1611394, at *4 (S.D. Ohio Apr. 10, 2015), which plaintiff cites as support, the Court ordered a remand and found that the ALJ had a heightened duty to develop the record with regard to plaintiff's assertion that he had been awarded state disability financial assistance "[i]n light of the [ALJ's] requirement to consider state agency disability determinations, plaintiff's status as a *pro se* claimant, and his unfamiliarity with hearing procedures." 2015 WL 1611394, at *4. Here, in contrast, plaintiff was represented by counsel during the ALJ hearing and bore the ultimate responsibility of proving the existence of a disability and producing additional evidence from his state disability determination necessary to substantiate his claim. Accordingly, plaintiff's first assignment of error should be overruled.[6]

---

[6] Plaintiff argues in reply that the ALJ did not mention "the length, nature, and extent of the nature of the treating relationship" between himself and Dr. Walker. (Doc. 21 at 2). However, plaintiff did not raise this issue in his Statement of Errors and may not raise new issues for the first time in his reply brief. *See Wright v. Holbrook*, 794 F.2d 1152, 1156 (6th Cir. 1986). *See also Bishop v. Oakstone Academy*, 477 F. Supp.2d 876, 889 (S.D. Ohio 2007) ("[I]t is well established that a moving party may not raise new issues for the first time in its reply brief."). In any event, this analysis applies when an ALJ declines to give controlling weight to a plaintiff's treating physician. 20 C.F.R. §416.927(c)(i)-(ii). Plaintiff neither points to evidence in the record nor develops an argument that Dr. Walker was his treating physician.

## 2. The ALJ's RFC determination is supported by substantial evidence.

In his second assignment of error, plaintiff argues that the ALJ failed to account for several pieces of evidence in the record. (Doc. 14 at 6-10). Specifically, plaintiff argues that the ALJ failed to mention certain records from neurologist Dr. Marsha Smith, including: her diagnoses of muscle weakness and acquired torsion dystonia in the neck; her note that plaintiff had difficulty keeping his head elevated in January 2013; and her diagnoses of neuropathy radial, weakness, neck pain, and dystonia after EMG and other imaging studies in March 2013. (*Id.* at 6) (citing Tr. 567-68, 559). Plaintiff alleges that after several Botox and lumbar steroid injections, he continued to suffer from cervical dystonia and neck pain. (*Id.* at 7) (citing Tr. 670). Plaintiff maintains the ALJ failed to consider that his condition did not improve after receiving more Botox injections in June 2015. (*Id.*) (citing Tr. 720). Plaintiff states that the ALJ did not consider that his physical therapist was dismissed due to lack of progress in March 2013. (*Id.*) (citing Tr. 365). Plaintiff further states that the ALJ refused to look at the physical manifestation of his dystonia, as well as the objective test results of his chronic hepatitis C. (*Id.*) (citing Tr. 55-56). Plaintiff also maintains that the ALJ ignored the neurological conditions and findings assessed by his medical sources, including Dr. Bo Headlam. (*Id.* at 8) (citing Tr. 676). Plaintiff also argues that the ALJ failed to consider several of Clinical Nurse Practitioner Andrea

Ryan's findings, including that he struggled with chronic pain issues, muscle spasms, and head and neck co-morbids, such as neuropathy. (*Id.* at 9).[7]

The Commissioner responds that the ALJ properly considered the evidence of record and was not obligated to discuss every piece of evidence in his decision. (Doc. 18 at 5). The Commissioner maintains that the ALJ did mention Dr. Smith's treatment of plaintiff's muscle weakness and numbness. (*Id.*) (citing Tr. 16). The Commissioner also argues that the ALJ considered plaintiff's diagnosis of Hepatitis C and found that it was a severe impairment. (*Id.*) (citing Tr. 11). The Commissioner argues that the ALJ considered the opinion of Nurse Practitioner Andrea Ryan, who gave an opinion on plaintiff's mental condition. (*Id.* at 6) (citing Tr. 19, Tr. 745-47). Finally, the Commissioner maintains that even if other evidence in the record supports a different conclusion, the ALJ's finding must still be upheld. (*Id.*).

The ALJ is responsible for assessing a claimant's RFC based on all of the relevant medical and other evidence. 20 C.F.R. § 416.945(a)(3). *See also Moore v. Astrue*, No. CIV.A. 07-204, 2008 WL 2051019, at *5-6 (E.D. Ky. May 12, 2008) (the ALJ is responsible for assessing the claimant's RFC by examining all the evidence in the record) (citing 20 C.F.R. §§ 416.945(a)(3), 416.946(c)); *Bingaman v. Comm'r of Soc. Sec.,* 186 F. App'x 642, 647 (6th Cir. 2006)). The ALJ can fulfill his obligation "without directly addressing in his written decision

---

[7] Plaintiff also argues that the ALJ failed to consider whether he met Listing 11.14 (Doc. 14 at 8). The Court declines to consider this argument as it appears to be unconnected to the remainder of plaintiff's assignment of error challenging the ALJ's consideration of the evidence in evaluating his RFC. Nor does plaintiff develop this argument or discuss how he might have met this Listing. The Sixth Circuit "has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived." *Kuhn v. Washtenaw County,* 709 F.3d 612, 624 (6th Cir. 2013) (citing *Caudill v. Hollan,* 431 F.3d 900, 915 n. 13 (6th Cir. 2005) (citing recent decisions that stand for these two related propositions)). *See also Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) (a plaintiff's failure to develop an argument challenging an ALJ's non-disability determination amounts to a waiver of that argument); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."). As plaintiff has failed to direct the Court's attention to any legal authority or evidentiary basis in support of his argument, the Court finds plaintiff has waived any arguments related to Listing 11.14.

every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x

496, 508 (6th Cir. 2006) (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453

(6th Cir. 1999) (citations and internal quotation marks omitted)). *See also Simons v. Barnhart*,

114 F. App'x 727 733 (6th Cir. 2004) ("Although required to develop the record fully and fairly,

an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific

evidence does not indicate that it was not considered.") (quoting *Craig v. Apfel*, 212 F.3d 433,

436 (8th Cir. 2000)).

In this case, the ALJ fulfilled his duty of conducting a thorough review of the record and

adequately considering the evidence before him. Contrary to plaintiff's assertion that the ALJ

"completely fails to mention all the records from neurologist Marsha Smith MD," the ALJ cited

to neurology records from July 2013 when he visited Dr. Smith's practice for left arm weakness

and numbness. (Tr. 16) (citing Tr. 552-55). The ALJ noted that during the July examination,

plaintiff demonstrated weakness in his wrist and decreased tone and atrophy, but he made no

abnormal movements and his reflexes were generally normal. (*Id.*). The ALJ also cited the MRI

of plaintiff's cervical spine from March 2013 and noted that it showed "reversal of the normal

cervical lordosis without radiographic evidence of fracture of listehsis [sic]." (Tr. 16) (citing Tr.

437). The ALJ cited plaintiff's various treatment regimens such as physical therapy, nerve

branch blocks, and epidural steroid injections for his neck pain, and noted that plaintiff

"continued to complain of pain and limitation." (*Id.*) (citing Tr. 321-59, 606-696, Tr. 719-21).

The ALJ was not required to cite to every piece of evidence in the record and plaintiff has not

shown how the ALJ erred by failing to specifically cite other pieces of evidence from Dr. Smith.

With regard to plaintiff's hepatitis C diagnosis, the ALJ did consider this condition to be a severe

impairment. (Tr. 11). Plaintiff has not shown how the objective evidence of record for his

hepatitis C condition supports further limitations than the ALJ assessed.

Next, plaintiff maintains that the ALJ "ignore[d] pain medicine, physical medicine and rehabilitation specialist . . . Dr. Bo Headlam's assessment of '...Lumbar facet syndrome..cervical spondylosis with myelopathy and polyneuropathy...' after physical examination on the page." (Doc. 14 at 8). Plaintiff also appears to argue that the ALJ should have given more consideration to Dr. Headlam's "opinion" and considered his specialization in accordance with 20 C.F.R. § 416.927(c). (*Id.*). Under § 416.927(c), an ALJ is required to evaluate a *medical opinion* based on certain regulatory factors, such the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, supportability, consistency, and specialization. 20 C.F.R. § 416.927(c). "Medical opinions" are defined under the Social Security regulations as "statements from acceptable medical sources that *reflect judgments about the nature and severity* of [the claimant's] impairment(s), including [] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 416.927 (emphasis added). "[I]n order to constitute a 'medical opinion,' a doctor must render a judgment about both the nature *and* severity of the claimant's impairment, and this conclusion may include information about the symptoms, diagnosis, prognosis, or residual capacity, insofar as those criteria might assist the ALJ in determining the nature and severity of the underlying condition." *England v. Comm'r of Soc. Sec.*, No. 15-12818, 2016 WL 8114219, at *9 (E.D. Mich. July 11, 2016), *report and recommendation adopted*, 2016 WL 5939288 (E.D. Mich. Oct. 13, 2016). A physician's progress notes and examination findings, including symptoms and diagnoses, are not medical opinions regarding a patient's functional limitations or restrictions. *Arnett v. Comm'r of Soc. Sec.*, 142 F. Supp.3d 586, 592 n.5 (S.D. Ohio 2015) (citing *Davis v. Comm'r of Soc. Sec.*, No. 11-cv-14094, 2012 WL

4378428, at *12-13 (E.D. Mich. June 15, 2012) (finding that a "mere diagnosis" or assignment of GAF score is not a medical opinion)). "The mere diagnosis of [a condition] . . . says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Dr. Headlam's recitation of plaintiff's diagnoses is not a "medical opinion" under the regulation and does not provide any insight into whether plaintiff's diagnoses impacted his work-related functioning. Therefore, the ALJ was under no duty to evaluate Dr. Headlam's progress notes under 20 C.F.R. § 416.927(c). Moreover, plaintiff has not shown how the ALJ's failure to cite Dr. Headlam's specific diagnoses constitutes reversible error in light of the ALJ's thorough review of the record, which in fact included an acknowledgement and review of Dr. Headlam's progress notes (albeit without specifically naming Dr. Headlam). (Tr. 16) (citing Exhibit B11F, Tr. 674-696).

Last, plaintiff argues that the ALJ failed to mention several findings from Clinical Nurse Practitioner Andrea Ryan, including her July 2015 assessment of muscle spasms in plaintiff's head or neck and her opinion that plaintiff "has struggled [with] chronic pain issues, muscle spasms & head & neck co-morbids such as neuropathy that create physical limitations. He has aggravating factors including hyper extension stress, & difficulties trying to turn his head." (Doc. 14 at 9) (citing Tr. 725, 746). Plaintiff argues that Ms. Ryan's observations are consistent with his cervical dystonia condition. (*Id.*). The ALJ adequately considered treatment records from Ms. Ryan, including the exact July 30, 2015 records that plaintiff claims the ALJ ignored. The ALJ noted: "[t]reatment records later that month reference muscle spasms of the head or neck, but indicate he was treated with medications and Botox injections." (Tr. 16) (citing Tr. 725). The ALJ also noted that plaintiff's neurological examination was negative. (*Id.*). Moreover, the ALJ adequately considered Ms. Ryan's medical source statement on plaintiff's

mental ability to do work-related activities.[8]  (*See* Tr. 19).  Plaintiff has not shown how the ALJ

erred by failing to note Ms. Ryan's opinion on his physical limitations when she completed an

opinion on his *mental* abilities.  Overall, plaintiff's second assignment of error offers no

substantive challenge to the ALJ's review of the record.  The Sixth Circuit has stressed that even

where substantial evidence would support a different conclusion or where a reviewing court

would have decided the matter differently, the ALJ's decision must be affirmed if it is supported

by substantial evidence.  *See Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999).

Accordingly, plaintiff's second assignment of error should be overruled.

### 3.  Plaintiff has failed to establish any error with the ALJ's credibility finding.

Plaintiff alleges that the ALJ erred in evaluating his chronic pain and credibility under

Social Security Ruling 95-5p.  (Doc. 15 at 10).  Plaintiff contends that the ALJ "refused to even

look at [his] neck and [the ALJ's] opinion includes no personal observations of him."  (*Id.* at 10-

11).  Plaintiff contends that the ALJ omitted or misstated several facts regarding his activities of

daily living, including that he lives in an apartment complex for the disabled, that he completes

household chores slowly, and that he has difficulty maintaining personal care and grooming.  (*Id.*

at 11) (citing Tr. 55, 255-56).  Plaintiff maintains that his "activities of daily living are consistent

with the objective evidence of pain and depression."  (*Id.*).  Plaintiff further maintains that the

ALJ failed to adequately explain how his felony DUI conviction and drug and alcohol abuse

negatively affect his credibility.  (*Id.* at 12).  Plaintiff also states that the ALJ failed to consider

his negative drug screenings.  (*Id.*) (citing Tr. 402, 466, 712, 761).

---

[8] In his reply brief, plaintiff argues that the ALJ failed to adequately explain why he rejected the opinion of Nurse Practitioner Ryan in accordance with the requirements of Social Security Ruling 06-03p.  (Doc. 21 at 4-5). However, as explained *supra* in footnote 6, plaintiff did not raise this issue in his Statement of Errors and may not raise new issues for the first time in his reply brief.

In response, the Commissioner argues that the ALJ "articulated a number of compelling reasons for finding [p]laintiff's subjective claims to be not entirely credible, consistent with Social Security Ruling (SSR) 96-7p and Sixth Circuit law." (Doc. 18 at 7) (citing Tr. 13-20). The Commissioner states that the ALJ reasonably noted that plaintiff remained capable of living by himself, preparing simple meals, shopping for groceries, and performing chores. (*Id.*) (citing Tr. 10-12, 18, 255-257). The Commissioner further states that the ALJ discussed plaintiff's limitations with his left hand and accounted for his difficulties by limiting him to light work with no more than occasional use of the left arm. (*Id.*). Finally, the Commissioner maintains that the ALJ reasonably determined that plaintiff's drug-seeking behavior undermined his credibility. (*Id.* at 9).

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers*, 486 F.3d at 247 (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). *See also Walters v. Comm'r. of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."). Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Id.*

In addition, Title 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996)[9] describe a two-part process for assessing the credibility of an individual's

---

[9] Effective March 28, 2016, SSR 96-7p has been superseded by SSR 16-3p, 2016 WL 1119029, which "provides guidance about how [the SSA] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms." *See* 2016 WL 1237954 (clarifying effective date of SSR 16-3p). There is no indication in the text of SSR 16-3p that the SSA intended to apply SSR 16-3p retroactively, and the Ruling therefore does not apply here.

statements about symptoms, including pain. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c), SSR 96-7p.

Upon review of the ALJ's credibility determination, the Court finds the ALJ's finding is substantially supported by the evidence of record and is entitled to deference. The ALJ concluded that plaintiff's subjective allegations of pain and limitation were inconsistent with the objective medical evidence of record. (Tr. 15).

Here, plaintiff has not shown that the ALJ committed any error in connection with the assessment of his credibility. The Court finds that the ALJ adequately considered plaintiff's subjective statements as to his symptoms and functional limitations, along with his daily activities, the objective medical evidence, and the medical opinions of record. (Tr. 14-19). *See Newman v. Colvin*, No. 1:15-cv-639, 2017 WL 685685, at *7 (S.D. Ohio Feb. 1, 2017) (holding that ALJ properly considered the requisite factors in making his credibility determination because he considered plaintiff's subjective statements, objective medical evidence, plaintiff's activities of daily living, and the record medical opinions), *report and recommendation adopted*,

_____

*Accord Cameron v. Colvin*, No. 1:15-cv-169, 2016 WL 4094884, at *2 (E.D. Tenn. Aug. 2, 2016).

*Newman v. Comm'r of Soc. Sec.*, 2017 WL 680632 (S.D. Ohio Feb. 21, 2017); *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005) ("[t]he ALJ need not analyze all seven factors identified in the regulation but should provide enough assessment to assure a reviewing court that he or she considered all relevant evidence.").

The ALJ followed the requisite two-step process and gave a thorough account of the evidence in assessing the credibility of plaintiff's allegations of pain and limitation. The ALJ determined that plaintiff had medically determinable physical and mental impairments that could reasonably be expected to cause his alleged symptoms. (Tr. 15). However, the ALJ found that plaintiff's statements as to the intensity, persistence and limiting effect of those symptoms were not entirely consistent with both the objective medical evidence and other evidence of record. In making this determination, the ALJ thoroughly evaluated and relied on: (1) the lack of supporting objective medical evidence; (2) plaintiff's daily activities; (3) plaintiff's history of alcohol and substance abuse and evidence of drug-seeking behavior; and (4) plaintiff's history of noncompliance with medication. (Tr. 18-19).

The ALJ conducted a thorough review of the objective medical evidence in assessing plaintiff's RFC and cited several physical examinations and diagnostic tests that were largely normal and unremarkable. (Tr. 15-16). As stated above in connection with plaintiff's second assignment of error, plaintiff has not shown how the ALJ erred in assessing his RFC and reviewing the evidence of record. Further, the ALJ considered plaintiff's daily activities, noting that he remained capable of living alone and could prepare simple meals and perform household chores. (Tr. 18). The ALJ also considered plaintiff's testimony of his severe pain in the neck, left arm, and hand, which limited his ability to sit, stand, walk, and lift and carry objects. (Tr. 14). The ALJ noted that plaintiff had undergone several treatment modalities to relieve his pain.

(*Id.*). Plaintiff challenges the ALJ's analysis on his activities of daily living, arguing that he completed household chores slowly and needed reminders to maintain personal care. However, any error in assessing plaintiff's ability to engage in these activities does not require remand because the ALJ considered these activities as one factor in his analysis and other evidence in the record, including medical records and examination findings, substantially supports the ALJ's credibility finding. *Johnson v. Colvin*, No. 1:13-cv-1749, 2014 WL 3511004, at *11 (N.D. Ohio July 14, 2014) (upholding ALJ's analysis on plaintiff's ability to complete household chores even though plaintiff testified that she could only complete household chores "in short spurts with breaks, and with assistance from others" because other evidence, including the medical evidence of record, substantially supported the ALJ's credibility finding).

In addition, plaintiff does not dispute the instances of drug-seeking behavior or medication non-compliance that the ALJ reasonably relied on to discount his credibility. The ALJ cited emergency room treatment records from March and April 2013 documenting that plaintiff aggressively demanded pain medication. (Tr. 18) (citing Tr. 409, 437). Moreover, in July 2013, plaintiff requested Tramadol, but was instead given Ibuprofen and informed he would have to submit to a urine drug screen to obtain additional medication. (*Id.*) (citing Tr. 603, 605). The ALJ also considered that plaintiff failed to take his psychotropic medications for nearly two years and Ms. Ryan documented a "long history" of non-compliance. (Tr. 18-19) (citing Tr. 316, 746).

Finally, the ALJ did not err by discounting plaintiff's credibility based on his substance abuse. The ALJ referenced plaintiff's extensive history of alcohol and substance abuse to highlight inconsistencies on plaintiff's representation of his drug use. (Tr. 18). For example, in 2012, plaintiff denied using substances, but his toxicology screen was positive for marijuana and

benzodiazepines. (Tr. 317). The Court finds no error in the ALJ's analysis. *See Walters*, 127

F.3d at 351 ("[d]iscounting credibility to a certain degree is appropriate where an ALJ finds

contradictions among the medical reports, [plaintiff's] testimony, and other evidence").

Moreover, plaintiff has not directed the Court's attention to legal authority in support of his

argument that the ALJ's consideration of alcohol and substance abuse lacks substantial evidence.

Overall, the ALJ cited ample reasons for discounting plaintiff's credibility. Because the ALJ's

credibility determination is supported by substantial evidence, this Court must defer to it. *See*

*Buxton*, 246 F.3d at 772. Plaintiff's third assignment of error should be overruled.

###    4.    The ALJ did not err by posing an improper hypothetical question to the VE.

Plaintiff contends that the ALJ erred in failing to pose a question to the VE describing his

limitations with concentration, persistence, pace, production schedules and demands, and his

need to take breaks for physical and psychological reasons. (Doc. 14 at 13). Plaintiff argues that

the ALJ noted in his opinion that plaintiff had "moderate difficulties" with "concentration,

persistence or pace" but the ALJ neither incorporated these limitations into the RFC or the

hypothetical question to the VE. (*Id.*). Plaintiff relies upon *Ealy v. Commissioner*, 584 F.3d 504,

516 (6th Cir. 2010), as well as two cases from the Eastern District of Michigan to argue that the

ALJ's failure to account for his limitations with concentration, persistence, and pace warrants

remand. Plaintiff argues that the medical source opinion from his treating physician Dr. Edwin

Walker, as well as an opinion from Ms. Ryan, document these limitations. (*Id.*) (citing Opinion

of Dr. Edwin Walker, Tr. 748-52, Opinion of Ms. Ryan, Tr.745-47).

The Commissioner responds that the ALJ adequately accounted for plaintiff's moderate

limitation in concentration, persistence, or pace in his hypothetical question to the VE, as well as

in the RFC assessment. (Doc. 18 at 9).

At the hearing, ALJ Boylan asked the VE to identify examples of jobs that a hypothetical individual could perform when he is "limited to simple, routine, and repetitive tasks, is limited to similar work-related decisions, limited to occasional and superficial interaction with the public as part of job duties, [and] is limited to tolerating occasional changes in the routine work setting." (Tr. 59). The VE testified that such an individual could perform some light, unskilled jobs such as housekeeping cleaner and inspector. (*Id.*). ALJ Boylan incorporated these same limitations into plaintiff's RFC but did not expressly address limitations as to concentration, persistence, or pace. (Tr. 13).

In *Ealy*, the Sixth Circuit held that where the medical opinion evidence establishes that a Social Security claimant has specific pace, speed, and concentration limitations, the ALJ must include such speed and pace-based restrictions in his RFC formulation and in the hypothetical questions posed to a VE. *See Ealy*, 594 F.3d at 516-17. The claimant's psychologist in *Ealy* limited him to "simple, repetitive tasks for two-hour segments over an eight-hour day where speed was not critical." 594 F.3d at 516. The ALJ adopted the psychologist's opinion and specific limitations, but then streamlined the hypothetical question to include only a limitation to "simple, repetitive tasks and instructions in non-public work settings" and omitted the two-hour pace-based restriction. *Id*. The Sixth Circuit determined that the ALJ's hypothetical question to the VE did not fully convey plaintiff's limitations because it omitted the speed and pace-based restrictions the ALJ found the claimant to have.

Although plaintiff identifies Dr. Walker and Ms. Ryan as medical sources who assessed specific or concrete pace-based restrictions, the Court finds that neither assessment imposes specific, concrete restrictions on plaintiff's ability to persist or concentrate as in *Ealy*. Moreover, as discussed above, the ALJ reasonably rejected these opinions and gave them little weight. The

Sixth Circuit has recently determined that "[c]ase law in this Circuit does not support a rule that a hypothetical providing for simple, unskilled work is per se insufficient to convey moderate limitations in concentration, persistence and pace." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016) (finding reliance on *Ealy* to be misguided where the plaintiff failed to cite to any evidence in the record that provided for specific, concrete limitations on her ability to maintain concentration, persistence or pace while doing simple, unskilled work). *See also Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 436-37 (6th Cir. 2014) (distinguishing *Ealy* on the basis that claimant's moderate limitations in concentration, persistence and pace were conveyed by ALJ's hypothetical limitation to "simple, routine, and repetitive tasks" because psychologist "did not place any concrete functional limitations on [plaintiff's] abilities to maintain attention, concentration, or pace when performing simple, repetitive, or routine tasks"). The ALJ here accounted for plaintiff's severe mental impairments and moderate limitations in concentration, persistence, and pace by restricting him to "simple, routine, and repetitive tasks," "simple work-related decisions," "occasional and superficial interaction with the public," and "occasional changes in the routine work setting." (Tr. 13). Plaintiff has not shown he suffers from additional mental restrictions that are supported by the evidence of record but erroneously omitted from the RFC and from the hypothetical to the VE.

Moreover, to the extent that plaintiff argues that the ALJ was required to recontact Dr. Walker (Doc. 14 at 13-14), his argument is not well-taken. The regulation in effect at the time of the ALJ's decision specified that recontacting a medical source is permissive, not mandatory, where there is insufficient evidence to make a disability decision. *See* 20 C.F.R. § 404.1520b(c)(1) (2014) ("We *may* recontact your treating physician, psychologist, or other

medical source.").[10]  Here, the evidence before the ALJ was not insufficient and there was no reason for the ALJ to recontact Dr. Walker regarding his opinion, which was rendered by a separate state agency before plaintiff filed his present SSI application.  Accordingly, plaintiff's final assignment of error should be overruled.

For the foregoing reasons, **IT IS THEREFORE RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and this case be closed on the docket of the Court.

Date: _7/16/18_                    _Karen L. Litkovitz_
                          Karen L. Litkovitz
                          United States Magistrate Judge

---

[10] Effective March 27, 2017, the regulation was amended and again provides that recontacting a medical source is permissive and not mandatory.  20 C.F.R. § 404.1520b(b)(2)(i) ("[w]e may recontact your medical source.").

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JEFFREY HOWARD,
    Plaintiff,

Case No. 1:17-cv-152

Black, J.

Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).